IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

THOMAS BRUCE SHAKESPEAR                                                    PLAINTIFF

v.                              CASE NO. 3:10CV00176 BSM

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION                                DEFENDANT

## ORDER

Plaintiff Thomas Bruce Shakespear appeals the final decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs [Doc. Nos. 12, 13]. The Commissioner's decision is affirmed because it is supported by substantial evidence.

## I. INTRODUCTION

Shakespear applied for disability insurance benefits and supplemental security income on April 10, 2006, initially based upon disability beginning January 1, 2001. Plaintiff's Brief pg. 1. He has amended his onset date of disability to September 15, 2005. Plf.'s Br. pg. 1. After the initial denial of his application and the denial of his motion for reconsideration, Shakespear timely filed a hearing request. *Id*. In his March 26, 2008, decision, the Administrative Law Judge[1] ("ALJ") concluded that Shakespear had not been under a disability within the meaning of the Social Security Act because he was capable of performing work that exists in significant numbers in the local and national economies

---

[1]David J. Manley, Administrative Law Judge.

despite his impairments. The Appeals Council denied Shakespear's request for a review of the ALJ's decision on June 14, 2010, and he timely commenced this appeal on August 5, 2010. *Id.*

## II. LEGAL STANDARD

In its judicial review of a decision denying benefits, a district court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, evidence that both detracts from the Commissioner's decision as well as evidence that supports it must be considered. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Commissioner's decision, however, will not be reversed merely because substantial evidence would have supported an opposite decision. *Id.*

## III. DISCUSSION

Shakespear, a thirty-eight-year-old male, is seeking benefits due to complications related to seizures, lumbar degenerative disc disease, headaches, bilateral wrist pain, breathing problems, depression, and anxiety. Plf.'s Br. pg. 2. Shakespear was in special education while in grade school and has a high school diploma. *Id*. He has past work experience as a heavy equipment machine operator in the Army. *Id*. He has not worked since

approximately September 2005. Defendant's Brief pg. 2.

The ALJ considered Shakespear's impairments by way of the required five-step sequential evaluation process. 20 C.F.R. § 416.920. At step one, he found that Shakespear had not engaged in substantial gainful activity since the application date. Transcript pg. 43. At step two, the ALJ found that Shakespear's pseudoseizures, low back pain, migraine headaches, anxiety disorder and recurrent major depressive disorder constituted severe impairments within the meaning of the Social Security regulations. Tr. 43.

At step three, the ALJ found that none of his impairments equaled a listed impairment under 20 C.F.R. §§ 416.920(d). He also found that Shakespear had the residual functional capacity to perform medium unskilled work activity with seizure restrictions as defined in 20 C.F.R. §§ 416.967(c), 416.968(a). *Id* at 57. Further restrictions included being limited to performing work where interpersonal contact is incidental to work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. *Id.*

At step four, the ALJ received testimony from the vocational expert that Shakespear is unable to perform his past relevant work. *Id.* Finally at step five, the ALJ found that based upon Shakespear's age, education, work experience, and residual functional capacity, he could perform representative occupations such as a cleaner at a business or do assembly work as a hand packer. *Id.* At 56. Both exist in significant numbers in the local and national economies. *Id.* For this reason, the ALJ found that Shakespear was not disabled. *Id.* at 58.

On appeal, Shakespear asserts that the ALJ erred in: (1) making the step 3 evaluation; (2) weighing the medical evidence and opinion's of Shakespear's physicians; (3) determining Shakespear's residual functional capacity; (4) his analysis of the Department of Veterans Affairs decision; (5) the hypothetical posed to the vocational expert; and (6) his credibility findings as to the testimony of Shakespear and other witnesses at the hearing. The Commissioner maintains that substantial evidence supports the ALJ's findings that Shakespear was not disabled and the decision must be affirmed.

A.  Substantial Evidence in the Record

The ALJ's decision is supported by substantial evidence.

*1. Listing argument*

Shakespear argues that, at step three, the ALJ.made a conclusory statement that he did not have an impairment that met or equaled a listing under 20 C.F.R. §§ 416.920(d) and that there was no discussion about which, if any listings, were considered. The Commissioner responds that the ALJ did consider evidence of a listed impairment, but his failure to elaborate on his conclusion does not require reversal. While it is preferable to have an ALJ state explicitly why a claimant failed to meet a listing, the conclusion must be upheld if the record supports it. *Garrett* ex rel. *Moore v. Barnhart*, 366 F.3d 643, 649 (8th Cir. 2004) (internal citations omitted). Here, the record supports the ALJ's conclusion that Shakespear did not meet the requirement for a listed impairment. Shakespear argues that the ALJ should have considered whether he met or equaled listings 11.02 for seizure disorder, 1.04 for spinal

conditions, 12.06 for anxiety disorder, and 12.04 for depression. The question of whether Shakespear meets a listed impairment is strictly a medical determination. *See* 20 CFR §§ 404.1526(a) and 416.926(b) (2008). Shakespear must present findings equal in severity to all of the criteria for the disputed listed impairment. *Marciniak v. Shalala*, 49 F. 3d 1350, 1353 (8th Cir. 1995).

Shakespear fails to meet the requirements of listing 11.02, nonconvulsive epilepsy, because he has not complied with the prescribed treatment for his seizures. A claimant must have convulsive epilepsy documented by seizures that occur more than once a month in spite of at least 3 months of prescribed treatment to meet 11.02. 20 CFR Pt. 404, Subpt. P. App. 1, Listing 11.02 (2008). Although the record reflects that Shakespear has been diagnosed with pseudoseizures, the record also supports the contention that his seizures are well controlled when he takes his medication as prescribed. Tr. 290 (September 2006 VA Community Outpatient Clinic progress report). Shakespear's medical records show that when his seizure medication levels are low, indicating that he has not taken his medicine as prescribed, his seizures occur more frequently. *See* Tr. 599 (noting Shakespear having two seizures in the past month when his medication level was noted as being low). Since Shakespear has failed to comply with his prescribed form of treatment, he has failed to meet the requirements of listing 11.02.

Shakespear also fails to meet the requirements of listing 1.04 for disorders of the spine. *See* 20 CFR Pt. 404, Subpt. P. App. 1, Listing 1.04 (2008). While the record indicates

that he has had some chronic lower back pain, nothing indicates that this pain rises to the level of a spinal disorder. Shakespear has admitted in his own brief that he does not have nerve root compression or stenosis as required by listing 1.04 but argues that his back pain should be equal to the requirements of the listing. Plf.'s. Br. pg. 7. The record indicates that Shakespear has not complained of, or sought treatment for, complaints of back pain since April 2007. Tr. 555. The record is also lacking of any evidence related to any type of acute back pain since the onset date of September 15, 2005. Shakespear has failed to meet the requirements of 1.04.

Lastly, Shakespear has failed to meet the requirements for listings 12.04 and 12.06 for anxiety and affective disorders. *See* 20 CFR Pt. 404, Subpt. P. App. 1, Listings 12.04 and 12.06 (2008). Both listings specify that in order for a claimant's mental impairment to meet the requirements of the listing, their mental impairment must result in two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked deficiencies in maintaining concentration, persistence or pace; or (4) repeated episodes of deterioration or decompensation, each of extended duration. *Id.* Shakespear's own statements indicate that he has no marked restriction in activities of daily living or maintaining social functioning as he has asserted throughout the record that he can perform household activities and play video games with his children among other things. While Shakespear's anxiety and depressive disorders affect his ability to concentrate for extended periods of time, the ALJ determined that this did not affect his ability to

understand and carry out short, simple instructions. Finally, the ALJ notes that there is no evidence in the record of Shakespear ever experiencing an episode of deterioration. The determination that none of Shakespear's impairments met the requirements of the disputed listings in step 3 was valid and the ALJ properly considered whether Shakespear met a listed impairment. The ALJ's failure to cite to specific listings being considered was not in error as the overall record supported his conclusions.

*2. Medical evidence and opinions arguments*

Shakespear asserts that the ALJ erred in weighing the medical evidence by ignoring favorable evidence and relying on medical records made prior to the disability onset date of September 15, 2005. To support his argument, Shakespear cites to examples of the ALJ discussing some of his seizure treatments, but failing to discuss others. Plf.'s. Br. pg. 8-9. An ALJ's failure to cite specific evidence does not indicate that it was not considered. *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) (internal citations omitted). While the ALJ considered some evidence prior to the onset date, there is substantial evidence in the record to support the ALJ's conclusion post September 15, 2005 as discussed *supra* in section III.A.1. Although Shakespear argues that the ALJ could have come up with a different conclusion if he viewed the evidence differently, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). The ALJ's conclusion that Shakespear is not disabled is supported by

substantial evidence in the record and he has properly considered the medical evidence provided beyond the onset date of September 15, 2005.

Shakespear also asserts that the ALJ failed to give proper deference to the medical opinions of Drs. Tribble and DeRoeck by rejecting both of their opinions. Shakespear cites to the "treating physician" rule to support his argument: "The opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). Dr. Tribble completed a medical source statement and a seizure evaluation concluding that Shakespear is unable to work. Plf.'s Br. pg. 14.

Shakespear claims that the ALJ rejected Dr. Tribble's opinion because Dr. Tribble failed to review his medical records when completing his medical source statement and because there was an inconsistency in Dr. Tribble's findings of limitations and restrictions. *Id*. The record shows that the ALJ properly rejected Dr. Tribble's opinion. During testimony, Shakespear admitted that he and his wife filled out the form for Dr. Tribble's medical source statement, that he has only seen Dr. Tribble twice, and Dr. Tribble also admitted that he never reviewed Shakespear's medical records, with the exception of an MRI, prior to making his assessment. Tr. 48. Also, Dr. Tribble's medical assessment contradicted itself by noting that Shakespear had no problems with balance or equilibrium, but should never stoop, kneel, crouch, or crawl. *Id*. The record shows that Dr. Tribble's opinion is not only inconsistent, but also based on little if any medical evidence. *See Holstrom v. Massanari*, 270 F.3d 715 (ALJ

did not err by discounting assessments made by treating physicians where opinions were in checklist form, were based on relatively short-term relationships with the claimant, and were inconsistent with the medical evidence as a whole). The ALJ did not err in rejecting the opinion of Dr. Tribble.

Dr. DeRoeck, a consultative examiner, conducted a psychological evaluation of Shakespear and diagnosed him with dementia, depressive disorder, and limited mental and physical capacity for sustained employment. Tr. 53. The ALJ decided to reject Dr. DeRoeck's assessment because "no other treating physician has indicated any mental limitations resulting from [Shakespear's] alleged anxiety and depression. *Id*. Similar to the reasons discussed supra, the ALJ did not err in rejecting Dr. DeRoecke's opinion given that it was not supported by any other medical evidence. Substantial evidence supports the ALJ's decision to reject the opinions of Drs. Tribble and DeRoecke and did not constitute error.

*3. Residual functional capacity argument*

Shakespear also submits that the ALJ improperly determined his residual functional capacity ("RFC"). Pursuant to 20 C.F.R. § 416.945, the ALJ must consider all of the relevant evidence in the record and resolve conflicts among the medical opinion evidence. *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995). In his decision denying benefits, the ALJ discussed all relevant evidence and determined that Shakespear was capable of performing medium, unskilled work activity with seizure restrictions as defined in 20 C.F.R. §§ 416.967(c), 416.968(a). Tr. 56. Further restrictions include being limited to performing work

9

where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, and the supervision required is simple, direct, and concrete. *Id*. at 55. Shakespear argues that the ALJ erred in determining that he has the ability to work at the medium exertional level. He specifically alleges that the ALJ did not do a function-by-function assessment of his abilities as required by Social Security Ruling ("SSR") 96-8p. The Commissioner submits that SSR 96-8p does not require a function-by-function assessment, but instead requires an ALJ to explain how the evidence supports his RFC determination.

The narrative discussion requirements of SSR 96-8p states: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at 7. The ALJ must also discuss the claimant's ability to perform work activities in an ordinary work setting and to describe the maximum amount of each work-related activity the claimant can perform each day (i.e., 8 hours a day for 5 days a week). *Id*. While there is language in SSR 96-8p that explains the purpose and relevance of doing a function-by-function assessment of a claimant's limitations or restrictions, as long as the ALJ discusses how the evidence supports his conclusion, he has met the requirements of SSR 96-8p.

There is substantial evidence in the record that the ALJ supported his RFC determination with both medical and nonmedical evidence. After discussing Shakespear's alleged neurological defects and migraines (Tr. 43-44, 48-49), seizures (Tr. 45-46), back and

wrist pain (Tr. 47), evidence of motor skills (Tr. 46-51, 53, 55), and mental condition (Tr. 54), the ALJ properly made a determination of Shakespear's RFC by noting that although he can not return to his past form of work due to his limitations, Shakespear has the ability to perform work activities at the medium unskilled levels with appropriate seizure restrictions. The ALJ did not err in making his RFC determination and his conclusions are supported by substantial evidence in the record.

### 4. Veterans Affairs argument

Shakespear briefly argues that the ALJ failed to address the report of the Department of Veterans Affairs ("VA") that determined he has pseudoseizures and was granted twenty percent (20%) service connected disability. On the contrary, the ALJ discusses the VA report and concludes that he is not bound by their determination of disability. Tr. 46. The ALJ is correct in that findings of disability by other federal agencies are not binding on an ALJ, although they are entitled to some weight. *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). There is no evidence that Shakespear's 20% service connected disability equates to a determination of disability under the laws of the Social Security Administration. *See Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (60% service-connected disability not equal to Social Security disability). Therefore, the ALJ did not err in his analysis of the VA decision.

### 5. Vocational expert argument

Shakespear also submits that the hypothetical question posed to the vocational expert

("VE") at the ALJ's hearing was flawed. Shakespear specifically claims that the ALJ did not include all of his alleged limitations and impairments when he posed the hypothetical. A vocational expert need only consider impairments supported by substantial evidence in the record and accepted as true by the ALJ. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). Accordingly, the ALJ, after reviewing all of the medical evidence and testimony of Shakespear and his witnesses, posed a hypothetical to the VE that included only the impairments that he determined were true and relevant to Shakespear's ability to work. Substantial evidence supported the inclusion of certain impairments and the exclusion of others. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (hypothetical may omit evidence not substantially supported by record as a whole). The ALJ's decision not to include all of Shakespear's alleged impairments was proper since not all of the impairments were supported by substantial evidence in the record. The hypothetical posed to the VE was proper and the ALJ did not err in his determination of Shakespear's ability to perform certain work activities.

### *6. Credibility arguments*

Lastly, Shakespear argues that the ALJ failed to make a proper credibility determination as to his testimony and the testimony of his witnesses. He alleges that the ALJ did not follow the credibility criteria as set out in *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984) and SSR 96-7p. The Commissioner asserts that the ALJ considered all relevant credibility factors pursuant to *Polaski* and other authority and is not required to list out each

factor so long as the factors are considered. *Polaski* requires that an ALJ consider all evidence related to complaints of pain when making a credibility determination, including evidence related to such matters as: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medications; and (5) functional restrictions." 739 F.3d at 1322. While the ALJ did not specifically list each of these factors when evaluating Shakespear's complaints of pain, there is substantial evidence in the record that he considered them. "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004).

The record shows that the ALJ noted and discussed Shakespear's daily activities as being inconsistent with his alleged level of pain. Tr. 51 For instance, Shakespear notes that he has radiating pain in his hands and wrists that prevent him from doing any work, yet he also states that he enjoys doing crafts such as carving wood and putting together model boats and planes which both require extensive use of the hand and wrist. *Id*. The ALJ also notes the only alleged side effect of Shakespear's prescribed medications is drowsiness. *Id*. at 50. Drowsiness may impede Shakespear's ability to do some forms of work, but it certainly does not render him disabled. It is clear that the ALJ properly considered the relevant criteria when determining Shakespear's credibility and did not err in his determination.

Shakespear's argument that the ALJ improperly discredited the testimony of his

witnesses also fails. "On review of [an] administrative agency's denial of social security disability benefits, [the court] does not reweigh evidence presented to [the] ALJ, and defers to the ALJ's determinations regarding credibility of witnesses, as long as they are supported by good reasons and substantial evidence." *Gulliams v. Barnhart*, 393 F. 3d 798 (8th Cir. 2005). Shakespear's wife, Mitzi, testified at the hearing and he also submitted lay statements from his family members to the ALJ. Tr. 133-140.

The ALJ determined that the witness statements were not credible because they were based upon an uncritical acceptance of Shakespear's complaints and were motivated by a desire to see him obtain benefits. Tr. 51. There is evidence to support the ALJ's contention given that Mitzi Shakespear told Dr. DeRoeck that Shakespear had attempted suicide 12 times, Tr. 437, yet there is no other evidence in the record supporting this statement. This point alone gives the ALJ a valid reason to discredit the testimony of the witness. *See Davis v. Callahan*, 125 F.3d 670, 675 (8th Cir. 1997) (explaining that ALJ determines what credence to give testimony of family and friends). The ALJ's determination of credibility was based on substantial evidence in the record and was not made in error.

## IV. CONCLUSION

The ALJ's decision is supported by substantial evidence in the record and is hereby affirmed.

IT IS SO ORDERED this 28th day of September 2011.

_____
UNITED STATES DISTRICT JUDGE